[Crim. No. 3706. In Bank.—May 17, 1934.]

THE PEOPLE, Respondent, v. LEE DWIGHT MURPHY, Appellant.

Frederic H. Vercoe, Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Defendant was indicted for the murder of his wife in Los Angeles County. The cause was tried by the court sitting without a jury, a jury having been waived. At the conclusion of the evidence defendant was found guilty of murder in the first degree and sentenced to suffer the extreme penalty. He appeals from the judgment.

The evidence is conclusive that the decedent died as the result of injuries inflicted upon her by the defendant while administering to her a severe and apparently unprovoked beating. Defendant concedes the sufficiency of the evidence connecting him with the homicide. He states in his opening brief that ''the deceased died on December 11th (1926), as a result of the injuries inflicted by appellant''. The details of the cruel treatment imposed upon the decedent, who at the time had been married to the defendant for approximately two weeks, need not be set forth at any great length. Suffice it to say that the defendant, by the use of a belt, belt buckle and his fists had bruised and battered his victim's entire body and had broken her jaws. Other treatment of a sordid and shocking nature need not be described. The injuries were inflicted on the evening of November 30, 1926, while the parties were in their apartment in Long Beach. They proved fatal eleven days later. Defendant was not apprehended until July, 1933, approximately six and one-half years after the commission of the homicide. He was arrested in Pittsburgh, Pennsylvania, and returned to this state for trial.

At the conclusion of the prosecution's case, the defendant took the stand in his own defense. He testified that during the day on which the homicide was committed he had purchased and consumed approximately three bottles of ''bitters'' possessing an alcoholic content in excess of fifty per cent by volume; that he remembered being in the apartment with his wife, the decedent, during the early part of the fatal evening; that the next thing he remembered was that he found himself wandering aimlessly along an ocean pier; that he concluded he ''must have hurt'' the decedent; that he returned home and found his wife suffering from the effects of the beating imposed; that he begged her forgive-

ness and undertook to make her comfortable during the remainder of the night; that he left the next morning when the owner of the apartment informed him the police were seeking him; that subsequently upon learning of his wife's death he left the city and state. As already indicated, he successfully avoided apprehension for several years. Defendant called no other witnesses.

Upon this appeal he raises no objection to the sufficiency of the evidence to establish the homicide or his connection therewith. Nor does he charge any error in the admission or rejection of evidence. He urges but one point, namely, the insufficiency of the evidence to establish the *degree* of the murder as that of the first. In support thereof defendant urges that he "was in such a disordered state of mind from the (voluntary) use of intoxicating liquor at the time he inflicted the injuries upon the deceased, from which she subsequently died, that he was not capable mentally of forming a clear, wilful, deliberate and premeditated intent to kill her which would make the crime murder in the first degree". He insists that he inflicted the injuries on the decedent "while he was in a drunken and sexual frenzy and as the result of a sudden heat and passion". From this he concludes that "the proper and justifiable verdict under the evidence would have been a verdict finding (him) guilty of murder in the second degree". He therefore requests this court to accordingly modify the judgment under the power conferred upon it by the 1927 amendment to section 1181 of the Penal Code, by which amendment appellate courts are authorized to modify a judgment when the evidence indicates that the defendant is "not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof". He refers to the case of *People* v. *Kelley,* 208 Cal. 387, 391 [281 Pac. 609], wherein the court reduced the gravity of the crime of which the defendant stood convicted. The facts of the Kelley case, *supra,* are wholly dissimilar to those at bar. In the Kelley case the evidence merely indicated that the victim of the homicide had died as the result of injuries incurred while engaged in a voluntary sexual debauch with the defendant. It nowhere appeared therein that the defendant had deliberately and intentionally inflicted the fatal injuries. They appeared to be the natural

result of the orgy engaged in by the parties. In other words, the decedent in the Kelley case was killed under circumstances tending to show an accidental or unpremeditated killing. For that reason this court felt constrained, under the law, to declare the offense to be that of manslaughter.

Such is not the present case. Here the fatal injuries were deliberately and intentionally inflicted, while the defendant was engaged in subjecting the decedent to a severe and unprovoked beating. The fact that he had previously imbibed intoxicants does not serve to exonerate him from the consequences flowing from his unlawful acts. Voluntary intoxication is never an excuse for crime. (Sec. 22, Pen. Code; *People* v. *Burkhart*, 211 Cal. 726, 730, 731 [297 Pac. 11].) Of course, whenever the existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the trier of the facts in determining whether such purpose, motive or intent actuated the accused in the perpetration of the offense, may properly take into consideration the fact that he was intoxicated at the time. (Authorities *supra.*) However, the weight to be accorded to evidence of intoxication, and whether such intoxication precluded the accused from forming a specific intention to kill and murder, which intent is a necessary element in murder of the first degree, are matters essentially for the determination of the trier of the facts. (*People* v. *Yeager*, 194 Cal. 452, 474 [229 Pac. 40]; *People* v. *Sainz*, 162 Cal. 242, 245 [121 Pac. 922].) From an examination of the entire record we cannot say that defendant, by reason of the use of intoxicants, was so disordered mentally at the time of the attack on the decedent as to preclude the resultant killing from being of that "willful, deliberate and premeditated" character designated in section 189 of the Penal Code as murder in the first degree. It is significant that defendant when on the stand testified in detail as to what transpired immediately before and immediately subsequent to the wrongful assault on the decedent. As to these events his recollection was reasonably vivid. His memory was faulty only as to the period during which the fatal injuries were being inflicted. In view of this the trial court might very properly discount or reject defendant's testimony as to the extent of his intoxication and conclude that defendant was not so in-

ebriated as to be unable to appreciate the character and gravity of his deliberate and wrongful acts.

Moreover, as indicative of defendant's state of mind at the time of the attack, the father of the decedent testified to a conversation in which the decedent stated to the witness that the defendant while beating her declared: "I once killed a girl in Fresno, and I don't know if I will kill you or not." The evidence of this conversation was admitted on the theory that it constituted a dying declaration. From this evidence the trier of the facts might reasonably conclude that defendant fully appreciated the gravity and wrongful character of his acts.

■ However, we need not rest an affirmance of the judgment solely on the foregoing reasoning. There are certain kinds of murder which carry with them conclusive evidence of premeditation. These the legislature has enumerated in the statute (sec. 189, Pen. Code) and has taken upon itself the responsibility of saying that they shall be deemed and held to be murder in the first degree. These cases are of two classes. When the killing is perpetrated by means of poison, lying in wait or *torture,* the means used is held to be conclusive evidence of premeditation. When the killing is done in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, the occasion is made conclusive evidence of premeditation. (*People* v. *Sanchez,* 24 Cal. 17, 29, 30; *People* v. *Milton,* 145 Cal. 169, 170 [78 Pac. 549].) If a case falls within either of these classes the statute determines that the killing is wilful, deliberate and premeditated and the trier of the facts has no alternative but to find the offender guilty of murder in the first degree.

In our opinion the brutal and shocking treatment to which the decedent was subjected, and as a result of which she died, constituted torture of an aggravated character within the meaning of the statute. The statute therefore conclusively designates the resulting homicide as murder in the first degree.

The judgment is affirmed.

Preston, J., Shenk, J., Langdon, J., and Seawell, J., concurred.